Filed 2/15/22  P. v. Garcia CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B307896 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA070524-02) |
| v. | |
| AVIU GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Reversed and remanded with directions.

Dan E. Chambers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

—————————

Aviu Garcia, convicted in 2004 with Jacinto Perez Sanchez of first degree murder with a felony-murder special-circumstance finding, appeals the superior court's denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] without issuing an order to show cause and holding an evidentiary hearing to determine his eligibility for relief. We agree with Garcia that the court erred in concluding the jury found he had actually fired the shot that killed Adrian Briones, making Garcia ineligible for resentencing as a matter of law. We also reject the Attorney General's contentions the superior court's error was harmless because the jury's special-circumstance finding, made more than a decade before the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), precluded Garcia's petition or, alternatively, the record of conviction, viewed in light of the *Banks*/*Clark* factors, indisputably established Garcia had been a major participant who acted with reckless indifference to human life during the underlying attempted robbery and could still be convicted of felony murder. We reverse the order denying Garcia's petition and remand with directions to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).

---

[1] Statutory references are to this code.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Drug Deal, Attempted Robbery and Shooting*

Garcia, Sanchez and Janet Cota were charged in an information with murder (§ 187, subd. (a)), attempted robbery (§§ 211, 664) and assault with a firearm (§ 245, subd. (a)(2)) with a special-circumstance allegation the murder had occurred during the commission of the attempted robbery (§ 190.2, subd. (a)(17)). The information additionally alleged all three defendants had personally used a handgun when committing felony murder and attempted robbery (§ 12022.53, subd. (b)) and Sanchez had personally and intentionally discharged a handgun proximately causing Briones's death (§ 12022.53, subds. (c) & (d)). It was further alleged that Garcia had used a handgun (§ 12022.5, subd. (a)) and personally inflicted great bodily injury on a second victim, Roberto Farias. Cota pleaded guilty to attempted robbery and admitted a firearm enhancement in a negotiated agreement and testified at Garcia and Sanchez's trial.

The prosecutor's theory of the case, as outlined in the information and described in his opening statement, was that Sanchez fired the shot that killed Briones. By closing argument, however, the prosecutor argued the evidence showed Garcia was the shooter. Our opinion affirming the judgments of conviction, reviewed by the superior court when considering Garcia's petition, described the evidence presented at the men's joint trial. (*People v. Sanchez* (July 18, 2005, B173340) [nonpub. opn.].)

Cota needed to make money while her husband was in jail. Cota's husband put her in touch with Farias, whom her husband had met while incarcerated. Farias said Briones, Farias's nephew, would pay a finder's fee for bringing him drug buyers. Farias and Cota set up a drug deal with Sanchez and Garcia, who

3

agreed to purchase between 100 to 150 pounds of marijuana for $300 to $330 per pound.

The day of the deal Sanchez and Garcia met Cota at a gas station, and the three drove to Farias's home. Farias, who thought Cota was coming alone, spoke to Briones on the phone and told him to come quickly because the buyers were there. At Briones's urging, Farias asked to see the money. Garcia and Sanchez showed him a bag in the back of the car that appeared to contain money wrapped in plastic. Sanchez said there was close to $50,000 in the bag.

Before Briones arrived, Cota noticed a gun in the waistband of Sanchez's pants. She asked Sanchez to give it to her so the deal could go forward. Sanchez gave Cota the gun, which she put in her pocket. Although Briones was reluctant to go through with the deal because Cota had not come alone, he changed his mind when Sanchez showed him the bag of money and asked to see "the merchandise." Briones invited Sanchez to go with him to the trailer behind Farias's duplex where the marijuana was stored.

Sanchez accompanied Briones to the trailer, bringing the bag of money with him. They started weighing packages of marijuana. Garcia backed the car into the driveway and down near the trailer. Briones handed Garcia several packages, and Garcia loaded them into the trunk of the car. By this time, Farias and Cota had walked down the driveway and were standing near Garcia. Briones told Garcia to stop loading any more packages into the car until he counted the money. Sanchez placed the money bag on the table. Briones picked up some bills and started counting.

4

According to Farias, who was standing outside the trailer door, Sanchez pulled out a gun, pointed it at Briones and said, "You're fucked. I'm taking everything." Briones dropped the money and reached for the gun. He grabbed Sanchez's arm, and the two men struggled. Briones had his back to the trailer door during the struggle. Farias saw Garcia run by him, raise his gun and point it at Briones. Farias tried to grab Garcia's hands. Farias felt something hit his hand and went down to the ground. He later realized he had been shot. Once on the ground Farias shielded his face with his hands. He was shot two more times, once in the arm and once in the stomach. He did not know who shot Briones.

Cota's narrative differed from Farias's. She testified she had been back near the trailer when the men were loading packages into the trunk. She, Garcia and Farias then walked to the front yard of Farias's home. When they heard a shot, they ran back to the trailer.[2] Farias, who arrived first, got up on the step and looked inside the trailer. He then turned around and jumped on top of Garcia. Garcia, who was holding a gun, fired a shot. (Cota said she only heard a total of two shots.) Sanchez ran out of the trailer; and he, Garcia and Cota ran to the car.

Cota did not see a gun in Sanchez's hand as he left the trailer, but she saw him holding a gun when they were in the car. (Cota still had the gun Sanchez had given her earlier. Garcia and Sanchez told her to take that gun home with her.) Sanchez said everything had gone badly and he had left the money behind.

Briones died as a result of a gunshot wound. According to a deputy medical examiner, Briones was shot in the back from a

_____

[2] Faustino Farias, Roberto Farias's brother, testified he saw Cota back by the trailer before any shots were fired.

distance of more than two or three feet. The bullet traveled through his body at an upward angle. A supervisor from the firearms identification section of the sheriff's department testified three .38 caliber shell casings found at the scene were fired from the same gun.[3]

The jury convicted Garcia and Sanchez of first degree murder, attempted robbery and assault with a firearm, found true the felony-murder special-circumstance allegation and, as to Garcia, also found true the firearm-use and great bodily injury enhancements with respect to the aggravated assault charge. The jury found not true the allegations Sanchez had personally and intentionally discharged a firearm during the attempted robbery and felony murder. The court sentenced both men to life without parole for murder plus determinate terms for the additional charges and enhancements.

We affirmed the judgments on appeal, rejecting Garcia's arguments there was insufficient evidence to support his convictions and the trial court had erred in failing to instruct sua sponte on self-defense and voluntary manslaughter as a lesser included offense of murder. We also found no merit to Garcia's claim of prosecutorial misconduct based on the inconsistency between the information, which alleged Sanchez had been the shooter, and the prosecutor's closing argument in which he told the jury Garcia had been the shooter. (*People v. Sanchez*, *supra*, B173340.)

---

[3]     Two of the shell casings were found outside the trailer and one inside it.

2. *Garcia's Petition for Resentencing*

On February 25, 2019 Garcia, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Garcia checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted under a felony-murder theory and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). The superior court appointed counsel to represent Garcia.[4]

The prosecutor filed a response to the resentencing petition contending Garcia was ineligible for resentencing under section 1170.95 based, in part, on the jury's special-circumstance finding. The prosecutor attached as an exhibit a copy of our opinion affirming Garcia's judgment of conviction. Garcia's appointed counsel filed a reply memorandum. The prosecution then filed a supplemental opposition, again arguing Garcia had failed to carry his prima facie burden, now arguing the record of conviction showed Garcia was the actual killer; he was a major participant in the underlying attempted robbery who had acted with reckless indifference to human life; and he had acted with implied malice, which continued to be a valid basis for a murder conviction. Garcia's counsel filed a further response, challenging the evidentiary basis for the prosecutor's arguments; and the prosecutor filed yet another supplemental response.

---

[4]    Judge Robert J. Higa presided at Garcia and Sanchez's 2004 trial. Judge Higa retired prior to the filing of Garcia's petition. The matter was assigned to Judge Olivia Rosales.

The superior court heard argument on August 7, 2020 and, after taking the matter under submission, on August 10, 2020 issued a memorandum decision denying Garcia's petition. Explaining its ruling, the court stated, "In this case, [Garcia] was convicted of first degree murder and the jury found true the special circumstance that the murder was committed in furtherance of a felony. The jury also found true that [Garcia] personally used a firearm in committing the murder charge as well as committing the assault charge in count III. [Garcia] armed himself with the firearm to attempt to rob drug dealers of over 100 pounds of marijuana. The jury found [Garcia] actually fired the gun and shot victim Briones. [Garcia] has failed to make a prima facie case for relief under Penal Code section 1170.05, subdivision (c)."

Garcia filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)[5] It also authorized, through new

---

[5] As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1170.95, subd. (b)(3)),[6] and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his

---

[6] Prior to enactment of Senate Bill No. 775 the requirement to appoint counsel was set forth in subdivision (c) of section 1170.95.

9

or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)[7]  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

---

[7]     As amended by Senate Bill No. 775, section 1170.95, subdivision (d)(3), now clarifies, "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

### 2. *Section 189, Subdivision (e), and the Narrowed Felony-murder Rule*

At the time of Garcia and Sanchez's trial section 189 permitted a conviction for felony murder by imputing malice to a participant in an inherently dangerous felony, including attempted robbery, that resulted in a homicide. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184.) As amended by Senate Bill 1437, section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e), which requires proof of specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

The overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for new section 189, subdivision (e)(3), were identified by the Supreme Court in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, and reiterated most recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*). As to whether the defendant was a major participant in one of the specified felonies, the *Banks* Court listed

the following factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court has enumerated the following factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.) ""[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."" (*Scoggins*, at p. 677; accord, *Banks*, *supra*, 61 Cal.4th at p. 803.)

As the *Scoggins* Court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*,

9 Cal.5th at p. 676; accord, *Banks*, *supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a 'grave risk of death'"].) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins*, at pp. 676- 677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

### 3. *The Superior Court Erred in Denying Garcia's Petition Without Issuing an Order To Show Cause*

#### a. *The jury's pre-*Banks*/*Clark *felony-murder special-circumstance finding does not preclude relief as a matter of law*

In *People v. Harris* (2021) 60 Cal.App.5th 939, 954-958, review granted April 28, 2021, S267802, we rejected the argument a jury's pre-*Banks/Clark* felony-murder special-circumstance finding precludes relief under section 1170.95 absent a successful challenge to the evidentiary support for the finding through a petition for writ of habeas corpus, the Attorney General's principal ground for arguing any error in the superior court's denial of Garcia's petition for resentencing was harmless. We also held in *Harris*, although a pre-*Banks/Clark* jury would have been instructed it had to find the defendant was a major participant in the underlying felony that led to the victim's death while acting with reckless indifference to human life to find the felony-murder special-circumstance allegations true, the elements now found in section 189, subdivision (e)(3), such a pre-*Banks/Clark* finding, without more, does not preclude relief under section 1170.95. (*Harris*, at p. 957; see *Scoggins*, *supra*, 9 Cal.5th at pp. 673-674 ["[w]here a decision clarifies the kind of conduct

13

proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision"]; *People v. Secrease* (2021) 63 Cal.App.5th 231, 256, review granted June 30, 2021, S268862 ["[A] jury's pre-*Banks* and *Clark* special circumstance determination cannot, by itself, defeat the allegations of Secrease's petition as a matter of law.  There must also be a judicial determination of the sufficiency of the evidence to support that determination, and Secrease is entitled to have it made in a section 1170.95 proceeding—under current law"].)  The Attorney General contends *Harris* was incorrectly decided but has presented no persuasive reason for us to modify our view on this issue.[8]

> b.  *The record of conviction does not establish Garcia is ineligible for resentencing as a matter of law*
>     i.  *Was Garcia the actual killer?*

As we explained in rejecting Garcia's challenge to the sufficiency of the evidence to support his convictions, "The evidence indicated Garcia was the one who shot Briones in the back."  Yet we also stated, in holding the trial court did not abuse its discretion in denying Sanchez's motion for acquittal as to the section 12022.53, subdivisions (c) and (d), enhancement allegations (which alleged Sanchez, not Garcia, had fired the

---

[8]     Whether a felony-murder special-circumstance finding made before *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95 is pending before the Supreme Court in *People v. Strong*, review granted March 10, 2021, S266606.

fatal shot), "Although the prosecutor unequivocally stated his belief Garcia was the shooter, there was still evidence from which the jury could reasonably find Sanchez was the one who shot and killed Briones.  The fatal bullet could have been discharged from the weapon Sanchez pulled on Briones during their struggle."  It was error, therefore, for the superior court to conclude when making the limited prima facie inquiry pursuant to section 1170.95, subdivision (c), that Garcia was the actual shooter and could still be convicted of felony murder under section 189, subdivision (e)(1).

ii. *Did Garcia act with reckless indifference to human life?*

Although the jury's pre-*Banks/Clark* felony-murder special-circumstance findings, standing alone, do not preclude resentencing under section 1170.95, before it issued an order to show cause, the superior court was authorized to review the record of conviction to determine whether Garcia was ineligible for resentencing under section 1170.95 as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.)  As a general matter, however, determining whether an aider and abettor was a major participant in the underlying felony who acted with a reckless indifference to human life is a fact-intensive inquiry, properly performed by the trier of fact following issuance of an order to show cause and an evidentiary hearing.  (Cf. *Scoggins*, *supra*, 9 Cal.5th at p. 683 [determining whether a defendant was a major participant in an underlying felony who acted with reckless indifference to life within the meaning of the special-circumstance statute "requires a fact-intensive, individualized inquiry"]; *In re Parrish* (2020) 58 Cal.App.5th 539, 542 [Supreme Court has prescribed "a fact-intensive and individualized inquiry"

15

to determine whether the evidence demonstrates reckless indifference and major participation].)

Here, contrary to the Attorney General's argument on appeal, although there is certainly evidence Garcia could still be convicted of murder under the felony-murder rule, the record of conviction does not establish as a matter of law—that is, without weighing the evidence and engaging in factfinding—that, if not the actual shooter, Garcia nonetheless is ineligible for resentencing as a major participant in the attempted robbery who acted with reckless indifference to human life. (See *Lewis*, *supra*, 11 Cal.5th at p. 974 ["at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion'"]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 ["the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues"].)

To be sure, both Garcia and Sanchez arrived at the scene of the drug deal armed (Sanchez apparently came with at least two guns), and it is a reasonable inference they planned to rob the dealers from the outset—a crime that could likely escalate into violence. Garcia remained present at the scene of the killing; and he did nothing after Briones was shot to aid the victim, fleeing with Sanchez and Cota. All those factors would tend to support a finding of reckless indifference as defined in *Banks* and *Clark*. But it was Sanchez, not Garcia, who initially used his firearm, pointing it at Briones and crudely announcing the robbery. Sanchez's actions, not Garcia's, precipitated the

16

struggle among Briones, Farias, Sanchez and Garcia, culminating in Briones's death. Displaying a gun might well have been intended and understood only as a show of force, not as an inevitable prelude to a deadly encounter. (See *Clark, supra*, 63 Cal.4th at p. 618 ["while the fact that a robbery involves a gun is a factor beyond the bare statutory requirements for first degree robbery felony murder, this mere fact, on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance"].)

Simply put, determining the evidence in the trial record proves beyond a reasonable doubt that Garcia was the actual killer or, if not, he acted during the attempted robbery with reckless indifference to life, requires a weighing of the evidence— factfinding—not permitted at the prima facie stage of the section 1170.95 process. Inferences from the evidence, even if reasonable, are not properly made before issuance of an order to show cause and an evidentiary hearing pursuant to section 1170.95, subdivision (d).

## DISPOSITION

The postjudgment order denying Garcia's section 1170.95 petition is reversed. On remand the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).


                                        PERLUSS, P. J.
        We concur:


        SEGAL, J.                FEUER, J.


17